STATE OF CONNECTICUT *v.* BENJAMIN SORIANO
(2701)

DANNEHY, C.P.J., TESTO and HULL, Js.

Argued April 3—decision released June 12, 1984

*Jon C. Blue,* for the appellant (defendant).

*William Domnarski,* deputy assistant state's attorney, with whom, on the brief, were *Thomas P. Miano,* assistant state's attorney, and *Katherine J. Lambert,* deputy assistant state's attorney, for the appellee (state).

DANNEHY, C.P.J. The defendant, charged in a substitute information with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), moved during his trial by jury to suppress testimony that might be given by two women who were present at the robbery and observed the defendant there, and who subsequently made photographic identifications of the defendant. After a suppression hearing at which these women and a police detective testified, a judge of the Superior Court in the judicial district of Hartford-New Britain at Hartford denied the motion. The defendant was convicted. His appeal[1] presented one issue: Did the court err in denying the defendant's motion to suppress the out-of-court photographic identifications by two of the witnesses to the crime and the subsequent in-court identification by one of those witnesses under the circumstances of this case?

A summary of the facts most favorable to the state shows that on October 4, 1977, about 11:30 p.m., one man and two women were in a Seven-Eleven store in Manchester. Those present were a female employee and two customers, one a man, the other a woman. The various individuals were going about their business when two black males entered the store, one brandishing a gun. Neither was wearing a mask. The man with the gun pulled a five dollar bill out of the female customer's hand. The other collected all the money from the cash register into a bag. The gunman then demanded the money in the safe. Upon being told there was no safe, he walked into another room looking for one. When he returned he went behind the counter and took four cartons of

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

cigarettes, the employee's jacket and money and property from the male customer. The store was brightly lit and the employee and the customers had time to observe the facial features of the unmasked gunman. Thereafter, the robbers left. The whole incident lasted only seconds.

The defendant offered an alibi defense which was essentially that he was en route from Utah to New York on the night of the robbery.

The defendant claims that the trial court erred in denying his motion to suppress any reference to the pretrial identifications and any in-court identification, arguing the pretrial procedures were impermissibly suggestive and thereby resulted in a denial of his due process rights.[2]

The transcript of the hearing on the motion to suppress reveals that about seven weeks after the robbery the female employee and the male customer went to the Manchester police station to view a photographic display which contained the defendant's photograph. The defendant's photograph was the only one which showed a placard hanging from his neck displaying numbers and the words "New York City Police Dept." The male customer was unable to identify any of the ten men pictured in the display but did pause to ponder the defendant's photograph. The employee une-

---

[2] The defendant raises for the first time on appeal that the identification procedure also violated an alleged Connecticut common law test for exclusion of identification evidence that is the result of "fancied recognition" of a witness. See State v. Frost, 105 Conn. 326, 342, 135 A. 446 (1926). Because this ground for exclusion was not presented to the trial court, and because the defendant has articulated no exceptional circumstances that warrant appellate review, it is not addressed by this court. Practice Book § 3063; State v. Evans, 165 Conn. 61, 70, 327 A.2d 576 (1973). Even were this court to address this ground which apparently had not been utilized for over fifty years, there is no basis to distinguish it from the constitutional tests set forth in this opinion. Accordingly, the court will not further address this new ground for exclusion.

quivocally identified the defendant as the robber with the gun. Later the same day, at her home, the female customer selected the defendant's photograph from the display after looking at the same ten photographs.

At the close of the testimony at the suppression hearing, the court heard arguments from both counsel. The court, in denying the motion to suppress, found from the evidence clear and convincing proof that under all of the circumstances of this case there was no substantial likelihood of irreparable misidentification.

The identification testimony at trial was essentially the same as at the hearing on the motion to suppress. Both women testified. Each said she had no doubts of the accuracy of her pretrial identification. The female employee did not identify the defendant in court, saying she could not be sure. The female customer identified the defendant as the robber.[3]

The defendant claims that the photographic display was unnecessarily suggestive because his photograph was emphasized by the placard hanging from his neck, visibly marking him as a person who, at the very least, had been in significant trouble with the law. It is certainly a better practice for police officers to cover any police identification markings, if "mugshots" are used. There is, however, no strict rule against the display of such photographs. *State* v. *Peary,* 176 Conn. 170, 176, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979). The nature of the photograph is only one factor to be considered. The test of an unnecessarily suggestive identification procedure

---

[3] At trial, the defendant did not object to the in-court identification. Accordingly, no error as to that issue has been preserved. We have, nevertheless, reviewed the record upon this issue to determine whether there was any substantial likelihood that the defendant was misidentified. In resolving this issue in this manner, the court finds that defense counsel, in failing to make an objection, merely submitted to the ruling of the trial judge to allow the identification testimony.

depends on the facts and circumstances of each case. *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *McKnight,* 191 Conn. 564, 569, 469 A.2d 397 (1983). *McKnight* defined the issue as whether, under the totality of the circumstances, the identification was reliable even though the pretrial procedure was suggestive. In applying the test, the court must determine whether there was no substantial likelihood of misidentification. Moreover, *McKnight* reiterated that on a motion to suppress evidence based upon photographic identifications, the defendant as the moving party must bear the initial burden of proving that the photographic identification was unconstitutional in some manner. *State* v. *McKnight,* supra, 570.

On review, like our Supreme Court, this court must first determine whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, determine whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances.

The witnesses who identified the defendant's photograph viewed the display independently of one another. There is no evidence that either of them was told which person in the display was under suspicion. There is no evidence that the police, at any time prior to or at the time of the identifications, called to the attention of the eyewitnesses the location of the defendant's photograph. In light of the fact that the witnesses testified that they had no doubts of their identification and did not notice the placard on the defendant's photograph, we fail to see how its mere presence can be successfully claimed to have had an effect on the witnesses' identification. The answer is that it cannot. Finally, we do not consider the length of time between the crime and the photographic identifications in the case to militate against reliability. *State* v. *McKnight,* supra, 573;

see also *Jennings* v. *United States,* 431 A.2d 552 (D.C. Ct. App. 1981), cert. denied, 457 U.S. 1135, 102 S. Ct. 2964, 73 L. Ed. 2d 1353 (1982). The circumstances in this case indicate quite clearly that the witnesses saw the defendant at close range in bright light. There were no obstructions to vision. No precise estimate of the total time the witnesses observed the defendant was given. There is a fair inference that the time was ample.

The trial judge gave a correct instruction to the jury on identification testimony, emphasizing the fact that identification in the legal sense could take place only after an opportunity to see and observe the person later identified. The alleged weakness in the photographic identification procedure was thus properly left for consideration by the jury as bearing on the weight to be given the identification. Therefore, the defendant's motion to suppress the identifications, as well as the related motion for a finding of not guilty, was rightfully denied. The defendant failed to sustain his burden of demonstrating that the identification procedure was unnecessarily suggestive.

There is no error.

In this opinion the other judges concurred.