STATE OF CONNECTICUT *v.* SHERMAN MILES
(11276)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and SANTANIELLO, Js.

Argued February 6—decision released April 2, 1985

*Bruce L. Levin,* for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

DANNEHY, J. The defendant, Sherman Miles, and his codefendant, Richard McClendon, who is not a party to this appeal, were charged with the crime of robbery in the first degree in violation of § 53a-134 (a) (4) of the General Statutes.[1] Both pleaded not guilty and elected trial by jury. The two were tried together. The jury found the codefendant not guilty and the defendant guilty as charged. A third person, also an accused in the robbery, was convicted on his plea of guilty. After the defendant's post trial motions for acquittal and for a new trial were denied, he appealed.

The defendant contends that the trial judge erred in (1) the denial of his motion to suppress identification testimony, (2) the refusal to instruct the jury that an unfavorable inference could be drawn against the state from the failure to produce a certain witness, and (3) the denial of his motions for a remedial order or for a mistrial based on the refusal by correction officers to allow the defendant to bring certain papers to court. We find no error.

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

Briefly, the evidence shows that the robbery occurred about 6:20 p.m. on December 27, 1980, when three men entered the Campus Liquor Store in New Haven and at gunpoint took money from the cash register and a gun, money and personal papers from one of the victims. When the men came in Anthony Goraieb and his son, Edward Goraieb, were in the store working. The store was well lit. Anthony was in the open area of the store and Edward was behind the counter at the cash register. Anthony immediately approached the men. They were not disguised and he had full opportunity to observe them before walking behind the counter. One of the men followed Anthony to where he was behind the counter, and, holding a gun to Anthony's head, said, "[t]his is a stickup." Another man covered Anthony and Edward with his gun while the third man planted a gun in Edward's ribs and ordered him to open the cash register. Edward refused. Anthony opened the register. The robbers removed the money, proceeded to rifle the pockets of Anthony, taking his gun, money and personal papers, and left. Anthony ran after them. Two passers-by joined the chase. The robbers were not overtaken.

At the pretrial hearing on the defendant's motion to suppress identification testimony, both of the victims identified the defendant as one of the robbers. Anthony Goraieb testified that he had had a good look at all of the robbers and that he was positive of his identification of the defendant because of his face-to-face confrontation with him in the open area of the store and the opportunity to observe him during the whole course of the robbery. Edward Goraieb testified that, from his first view of the robbers as they entered the store, he had ample opportunity to observe them from his vantage point behind the counter. Edward identified the defendant as the man who had held a gun to Anthony's head during the robbery.

The two victims selected the defendant's picture from arrays of photographs obtained from police files. Detective Joseph Reynolds testified that he was unable to recreate the array from which the identifications had been made because he had not preserved the array. He did testify as to the composition of the array, however. He stated that all the photographs were black and white police department photographs depicting black males. The defendant argues that the procedure was impermissibly suggestive because the array was not preserved[2] and contends that the reliability of the identifications was undercut by the victims' inconsistent descriptions of the robbers. The record does not support the defendant's claim.

The failure to preserve the array did not preclude a finding that the procedure was not suggestive. See *State* v. *Doolittle,* 189 Conn. 183, 199, 455 A.2d 843 (1983), and cases cited therein. The trial court found, in spite of the unavailability of the photographs, that the array was not suggestive. The record shows that the victims viewed the photographs separately and did not communicate with each other between viewings. Without any prompting by the police, both independently identified the defendant as one of the three men who had robbed them. There is no evidence that the police in any way suggested to the victims which persons they should identify. We conclude that the trial judge was correct in finding that the array was not impermissibly suggestive. See *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

With regard to the issue of contradictory descriptions being given by the victims to the police, the alleged inconsistency relates to whether the robbers were black

[2] The photographs were not lost or destroyed but were returned to the police files without any identifying marks. The defendant did not ask to see the files where the photographs are kept but claims error in the failure to preserve the array.

men or men of "Spanish extraction" and "light-skinned." The defendant suggests that in order for the array to be fair it should have consisted of "light-skinned" men of "Spanish extraction." The short answer to this contention is that inconsistencies in pretrial description go to the weight to be accorded the identification testimony by the trier of the fact. *State v. Soriano*, 2 Conn. App. 127, 132, 476 A.2d 633 (1984). These inconsistencies in pretrial descriptions were vigorously argued by defense counsel in the suppression hearing. We will not substitute our finding of fact for that of the trial judge where the testimony, though conflicting in one respect, led to positive identifications. Given the fact that, at least as far as the record discloses, the police were without a suspect, we agree with the trial judge that the array was abundantly fair.[3]

The defendant next claims that he was entitled to a charge that an unfavorable inference should be drawn against the state for its failure to furnish the testimony of Samuel McDuffy. "The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." *Ezzo v. Geremiah*, 107 Conn. 670, 677, 142 A. 461 (1928). "There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce." (Citations omitted.) *Secondino v. New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960).

Samuel McDuffy and George Banks were the bystanders who joined Anthony Goraieb's chase after the

---

[3] The trial court found that there was a strong independent source for Anthony Goraieb's identification of the defendant. The record reveals that both victims' in-court identifications were positive. The defendant does not here contend that the in-court identifications made by Anthony and Edward Goraieb should have been suppressed.

robbers. George Banks testified for the defense. Our review of the transcript indicates that the testimony of McDuffy would have been cumulative at best. "To charge the jury on the rule, the party claiming the benefit of the rule must show that he is entitled to it." *Doran* v. *Wolk,* 170 Conn. 226, 229, 365 A.2d 1190 (1976). "A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without anticipation that an inference may be invoked." *State* v. *Brown,* 169 Conn. 692, 705, 364 A.2d 186 (1975). We conclude that the defendant has not demonstrated that he was entitled to the requested charge.

During the course of his testimony, the defendant moved for a mistrial or an appropriate remedial order based on the refusal of correction officers to allow the defendant to bring his trial notes to court. The trial judge denied the motions. In so doing, however, he specifically stated that the defendant could pursue the matter further at a more appropriate time. The defendant did not accept the court's invitation. He did nothing. The denial of a mistrial is largely discretionary with the trial court and will not be disturbed on appeal unless the appellant can affirmatively demonstrate that his rights were substantially prejudiced so as to deny him a fair trial. *State* v. *Maldonado,* 193 Conn. 350, 356, 478 A.2d 581 (1984). Although it is not clear, it appears that the basis for the defendant's argument is simply a decision on his part "to raise this issue to this tribunal at this time in order to avoid a claim of a 'deliberate bypass' in any subsequent proceedings." *Staples* v. *Robinson,* 193 Conn. 439, 476 A.2d 580 (1984). The defendant concedes, as he must, that the record is lacking as to any actual prejudice he suffered as a result

of the actions of the correction officers. Under the circumstances, the trial court did not err in denying the defendant's motions.

There is no error.

In this opinion the other judges concurred.