## STATE OF CONNECTICUT *v.* VAN WRIGHT
### (3975)

DUPONT, C. J., HULL and DALY, Js.

Argued May 1—decision released August 5, 1986

*Martin S. Stillman,* special public defender, for the appellant (defendant).

*Michael E. O'Hare,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Kevin McMahon,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant was convicted by a jury of the crime of sexual assault in the first degree, a violation of General Statutes § 53a-70, and of robbery in the

first degree, a violation of General Statutes § 53a-134 (a) (3). From the denial of his motion to set aside the verdict, the defendant has appealed claiming that the trial court erred: (1) in failing to suppress the out-of-court and in-court identifications; (2) in not charging the jury on the law relating to the failure of a party to produce a certain witness; (3) in refusing to set aside the verdict on the ground of insufficient evidence; and (4) in failing to instruct the state's attorney to investigate certain testimony presented by a witness for the defendant.

The jury could reasonably have found the following facts. The complainant lives on Ogilby Drive in Hartford with her daughter and her eight year old son. She is employed at a nursing home as a nurse's aide on the 11 p.m. to 7 a.m. shift and uses a taxicab to get back and forth from her place of employment. On December 29, 1982, she walked to the public telephone on Mark Twain Drive at approximately 10:30 p.m. to inquire about a taxicab. She then returned to her apartment. Because no taxi had arrived by 10:50 p.m., she again went to the public telephone, and on her way, saw the defendant in front of Ogilby Drive, near a street light. She had observed him in the neighborhood previously and had talked to him on one occasion. The defendant was wearing a hooded, brown suede jacket with a white fleece lining, navy blue jogging pants and a white knit skull cap.

While completing the second call for the taxicab, she saw two young men approaching her from fifty to seventy feet away. As they passed under street lights, she recognized the defendant and another black youth, but did not know either by name. She was grabbed from behind and a pair of pants were put in front of her face. In the struggle, she saw her assailants in front of her and recognized that they were the same duo who had approached earlier on Mark Twain Drive. The defend-

ant's companion had a knife. They dragged her across the street to a wooded area where they sexually assaulted her and afterwards, took her rings and money. During the assault, the defendant was referred to as "Vince" by his companion. After threatening to kill the victim if she told anyone of the attack, the assailants left. The victim went to a neighbor's house, that of Doreen Hutchins, and the police were notified.

When the taxicab arrived at the victim's house at 11:15 p.m., the daughter got into the car to look for her mother. She saw the defendant running across the field from Mark Twain Drive. She had known the defendant for two years because both were students at Weaver High School. From the illumination of the street lights, she observed that the defendant was wearing blue sweat pants, a brown fleece-lined jacket and a skull cap. While the daughter was in the company of her boyfriend, Alvin McClennon, earlier that day, she had seen the defendant similarly attired on the bus with Marshall Nelson.

The victim's daughter returned home in the taxicab with McClennon and scoured the neighborhood looking for her mother, finally locating her at the neighbor's apartment. Her mother told her that she had been raped. The victim's eye was swollen, her lip was lacerated, and her hair was disheveled and covered with leaves. Her coat and a portion of her uniform were torn. The daughter returned home to care for her brother while the police came and drove the victim to the hospital. The police recovered the victim's clothing and a pair of child's pants at the scene of the assault. At the hospital, the victim described her assailants as young black males between nineteen and twenty years of age. One wore a short hooded coat which was either brown, tan or gray and was named "Vince." When the daughter arrived at the hospital, the victim described the attackers to her daughter who deduced that the descrip-

tion of one assailant matched that of the defendant whom she had seen in the neighborhood earlier.

Upon learning that the defendant was in a particular apartment located on Ogilby Drive, the victim's daughter, McClennon and several of the victim's relatives[1] surrounded the apartment. The Hartford police were notified. After the daughter and McClennon knocked at the door and asked for the defendant, someone inside, without being asked, said "I didn't do nothing to [the victim]." When the defendant emerged from the premises, the police officers suggested, in light of the threatening situation, that he accompany them elsewhere and they went to the Annie Fischer School nearby. The police officers advised the defendant that they planned to conduct a confrontation. The defendant agreed to be viewed by the victim and he was brought into a room where the victim and her daughter were both present. He was identified by the victim and was subsequently arrested. She was shown a photographic array and identified the second assailant as Nelson.[2] McClennon also indicated that he had heard someone call the defendant "Vince" during the course of a football game.

I

The defendant claims that the trial court should have suppressed the in-court and out-of-court identifications. In moving to suppress identification evidence, a defendant must first prove that the identification was made as a result of an unconstitutional procedure. *State* v. *Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986). In determining whether the identification procedures violated the defendant's due process rights, the inquiry

[1] Earlier in the day the victim's daughter and McClennon had taken a bus to New York City and returned that afternoon with a number of the victim's relatives.

[2] Nelson was tried with the defendant and also convicted.

must ascertain (1) whether the identification procedure was impermissibly and unnecessarily suggestive, and (2), if so, whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances. *State* v. *Amarillo,* 198 Conn. 285, 291, 503 A.2d 146 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 157, 508 A.2d 49 (1986).

"We recognize that almost any one-to-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively 'suggestive,' but not all suggestive confrontations are unnecessary. *State* v. *Hamele,* 188 Conn. 372, 376–77, 449 A.2d 1020 (1982); *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976)." *State* v. *Aversa,* 197 Conn. 685, 694, 501 A.2d 370 (1985). "Circumstances may justify an immediate viewing by the victim because prompt on-the-scene confrontations are more likely to be accurate and allow an innocent party to be quickly released if there is no positive identification." *State* v. *Aversa,* supra, 694 n.3; *State* v. *Hamele,* supra; *State* v. *Mallette,* 159 Conn. 143, 149, 267 A.2d 438 (1970). We find that the circumstances here, wherein the police were obliged to defuse a potentially explosive situation, justified an immediate viewing and that the confrontation by the victim and daughter was not unnecessarily suggestive.

Even if we were to find this one-on-one confrontation unnecessarily suggestive, however, that does not end our inquiry into whether the identification is admissible at the trial."Because reliability is the 'linchpin' in determining the admissibility of identification evidence; *Manson* v. *Brathwaite,* [432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)]; we must consider whether under the 'totality of circumstances' the identifications were reliable." *State* v. *Theriault,* 182 Conn. 366, 373, 438 A.2d 432 (1980). "The constitutional test for reliability requires the trial court to consider 'the

opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' " *Manson* v. *Brathwaite,* supra; *State* v. *Hinton,* 196 Conn. 289, 295–96, 493 A.2d 836 (1985); see *Neil* v. *Biggers,* 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

"The reliability of the victim's identification of the defendant as her assailant is disclosed by the circumstances, most of which we have already set out. We would also note that the victim had a good and sufficient opportunity to view her assailant at the time of the assault at close range and with adequate lighting; these factors enhance reliability. . . . It has been stated 'that the victim of [a] crime is apt to be a more reliable source of identification than is a mere spectator to the incident.' " (Citations omitted.) *In re Juvenile Appeal (83-EF),* 190 Conn. 428, 436–37, 461 A.2d 957 (1983). It is clear that the evidence of identification was reliable and that the trial court did not err in refusing to suppress the evidence of those identifications. The defendant's constitutional rights, therefore, have not been abridged.

## II

The defendant claims that he was entitled to a jury instruction to the effect that an unfavorable inference may be drawn against the state for its failure to furnish the testimony of McClennon, the boyfriend of the victim's daughter. "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to

have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960).

Because McClennon was not shown to have been an eyewitness, he would not have been a person the state would have naturally produced as one possessing superior or unique knowledge material to the case. Accordingly, the trial court did not err in refusing to instruct the jury on the *Secondino* rule. *State* v. *Hart,* 198 Conn. 424, 429, 503 A.2d 588 (1986). Furthermore, the *Secondino* rule would not apply because the state called McClennon as a rebuttal witness.

## III

When a verdict is challenged because of insufficient evidence, the standard applied is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986); *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985); *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980). "The evidence must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Carter,* supra, 44. In determining that each element of the crime charged is proved beyond a reasonable doubt, the jury may make reasonable and logical inferences but may not resort to speculation and conjecture. *State* v. *Monk,* supra, 433; *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980).

"We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses

and to gauge their credibility." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). In addition, we cannot retry the facts or judge the credibility of the witnesses. *State* v. *Monk,* supra.

The victim's testimony, if believed by the jury, was sufficient to establish beyond a reasonable doubt that the defendant compelled the victim to engage in sexual intercourse by the use of force and also that he robbed her of her money and jewelry. The verdict indicates that the jury chose to believe the state's version of the evidence, and to disbelieve the defendant's version. *State* v. *Monk,* supra.

IV

The defendant claims finally that the trial court erred in failing to instruct the state's attorney to investigate the testimony of the defendant's witness, Robert Williams, who testified that he overheard the victim tell her daughter during the trial that she could not be sure the defendant was her assailant. Both the victim and the daughter denied this conversation. The defendant never requested the court to order an investigation of the incident. The defendant is therefore attempting to obtain review of a claim not made to the trial court. He is not entitled to such a review under exceptional circumstances as enunciated in *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The defendant's claim relates to a conflict between the testimony of two witnesses. The record does not support the defendant's claim that a question of fundamental constitutional dimension is involved. "It is the province of the jury to determine the credibility of the witnesses and the weight to be accorded their testimony."

*Trzcinski* v. *Richey,* 190 Conn. 285, 298, 460 A.2d 1269 (1983); Holden & Daly, Connecticut Evidence § 125a, p. 592.

There is no error.

In this opinion the other judges concurred.