STATE OF CONNECTICUT *v.* DONALD TATE
(3598)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 8—decision released November 11, 1986

*Martin B. Krulewitz,* for the appellant (defendant).

*Bernadette Conway,* deputy assistant state's attorney, with whom, on the brief, was *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing following his conviction, after a trial by jury, of the crimes of burglary in the third degree, in violation of General Statutes § 53a-103, and larceny in the third degree, in violation of General Statutes §§ 53a-119 and 53a-124. The defendant's sole claim of error is that the trial court failed to suppress the victim's identification testimony.

The jury could reasonably have found the following facts. At some time between 11 and 11:30 a.m. on December 14, 1983, the victim arrived at her home in Waterford after a shopping trip. As she was leaving her car, she noticed a man in a crouched position in the woods by her home. The man appeared to be down on his right knee and was holding a white bag in his right hand. Although the victim made only a quick glance toward the left side of the person's face, she was later able to describe his clothing. The victim recounted that the man was wearing dark pants and a blue sweatshirt, the hood of which was hanging out and over the back of a brown or rust colored coat.

The victim went into her house and, upon finding that the doors were open and that she had been robbed, immediately called the police. Detective Joseph Falman arrived at the victim's home and obtained her description of the man she had seen in the woods, whom she described as a white male of medium height, medium build, with brown, short, curly hair, wearing dark pants, a dark, hooded sweatshirt, and a brown jacket. The victim admitted that she did not get a good look at the man's face.

Falman left the victim's home. Soon after, while patrolling the area, he observed a gray Chevette traveling at a faster than normal rate of speed and heading away from the victim's house. The road that Falman was patrolling and where he observed the car was the same road on which the victim's house was located. Falman contacted Detectives Donald McCarthy and Richard DeNoia by radio and informed them that a small, gray vehicle was heading in their direction. The speeding vehicle was stopped by McCarthy and DeNoia after it had run through a stop sign and a red light.

The driver of the vehicle was the defendant, Donald Tate. He appeared to the officers to resemble the description, relayed to them by Falman, of the man seen by the victim. Falman was notified of the stop, which occurred about two miles from the victim's home. The defendant and his passenger, a male, were ordered out of the car. The defendant reached into the back seat of the car and attempted to retrieve a black jacket from the bottom of a pile of clothing located there. McCarthy requested that the defendant leave the black jacket and put on instead a brown jacket located on top of the pile of clothing. The defendant also attempted to tuck the hood of a sweatshirt he was wearing under the jacket. McCarthy requested that the defendant allow the hood to hang out over the back of the jacket. The defendant complied with the officer's requests.

Within an hour after her first view of the man she had seen in the woods, the victim was driven to the roadside stop by Falman. There, she observed the defendant and his passenger standing by a fence. The victim stated that she was 99 percent certain that the defendant was the same man she saw in her yard because of the "unusual color combination" of his clothing.

Although the police allowed the defendant to leave the scene, he was arrested approximately two months later, on February 10, 1984, and charged with burglary in the third degree; General Statutes § 53a-103; and larceny in the third degree. General Statutes §§ 53a-119 and 53a-124. In the interim, the police had searched the wooded area surrounding the victim's home and found a blue prybar and a white pillowcase containing items stolen from the house.

The defendant elected to be tried by a jury. Prior to the commencement of the trial, the defendant moved to suppress the roadside identification by the victim. The trial court, after a hearing, denied the motion. The trial proceeded and the victim testified as to her out-of-court identification. The defendant was found guilty as charged.

On appeal, the defendant claims the court erred in denying his motion to suppress. We disagree.

Whether an identification procedure offends due process depends (1) on whether it was impermissibly and unnecessarily suggestive, and (2) if so, whether the identification was nonetheless reliable based on the totality of the circumstances. *State* v. *Amarillo,* 198 Conn. 285, 293, 503 A.2d 146 (1986); *State* v. *Anderson,* 6 Conn. App. 15, 19–23, 502 A.2d 446 (1986).

The state concedes that the out-of-court show-up here was suggestive. It does not, however, automatically follow that such a show-up was *impermissibly* suggestive. See, e.g., *State* v. *Collette,* 199 Conn. 308, 310–12, 507 A.2d 99 (1986); *State* v. *Hamele,* 188 Conn. 372, 376–77, 449 A.2d 1020 (1982); *State* v. *Mitchell,* 7 Conn. App. 46, 64, 507 A.2d 1017 (1986). The factual situation in this case closely resembles the situations considered by the Supreme Court in *State* v. *Collette,* supra, and in *State* v. *Hamele,* supra, and by this court in *State* v. *Mitchell,* supra. In those cases, the courts addressed

whether a one-on-one identification of a defendant by the victim was impermissibly suggestive when the identification was made shortly after the crime occurred. Both courts emphasized that " 'the benefits of promptness not only aid reliability but permit a quick release of an innocent party if there is no positive identification and allow the police to resume the investigation with a minimum of delay.' " *State* v. *Hamele,* supra, 377; *State* v. *Mitchell,* supra. In those cases, the courts concluded that the identifications were not impermissibly or unnecessarily suggestive.

Here, as in *Collette, Hamele* and *Mitchell,* the show-up occurred shortly after the event. The defendant fit the description given to the police by the victim. There were no readily identifiable items belonging to the victim in the possession of the defendant. It was important for the police investigation to know whether the defendant was involved. Under these circumstances, the roadside show-up cannot be deemed to be impermissibly suggestive. *State* v. *Collette,* supra; *State* v. *Hamele,* supra, 377–78; *State* v. *Mitchell,* supra.

Even if we assume, however, that the identification procedure was impermissibly suggestive, the identification was nevertheless admissible if it is found to be reliable based on an examination of the totality of the circumstances. We note initially that in ruling on the reliability of the identification procedure, the trial court's function is to determine only whether the evidence is admissible, not whether the identification made by the witness is to be believed. This latter task is the function of the ultimate factfinder in the case. *Manson* v. *Brathwaite,* 432 U.S. 98, 116, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Mitchell,* supra, 65. In *Manson,* the United States Supreme Court observed that short of the point at which the identification procedures produce, " 'a very substantial likelihood of irreparable misidentification' "; *Manson* v. *Brathwaite,*

supra; the identification "evidence is for the jury to weigh. . . . Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Id.; see also *State* v. *Amarillo,* supra; *State* v. *Perez,* 198 Conn. 68, 77, 502 A.2d 368 (1985); *State* v. *Soriano,* 2 Conn. App. 127, 132, 476 A.2d 633 (1984).

In determining whether an identification is reliable, the United States Supreme Court in *Manson* pointed to the following factors "to be weighed [against] the corrupting effect of the suggestive identification itself"; *Manson* v. *Brathwaite,* supra, 114; the opportunity of the victim to view the criminal at the time of the crime, the degree of attention of the victim, the accuracy of the victim's prior description, the level of certainty demonstrated at the confrontation, and the time lapse between the crime and the identification. Id.

In this case, the evidence produced at the hearing on the motion to suppress fully supports the conclusion that the identification was reliable under the totality of the circumstances. The victim's view of the defendant, although limited to a few seconds, afforded her an ample opportunity to fix in her mind what she saw. The day was bright and clear and the victim had an unobstructed view from approximately twenty-five feet. Although she could not describe the defendant's face, she described his clothing with remarkable accuracy and manifested a high degree of certainty in her opinion. Her description, in fact, was accurate enough for the police to suspect the defendant. There was no question that the victim looked attentively at the defendant, particularly at the clothing he was wearing. Finally, the short space of time between the incident and the show-up supports the reliability of the identification. In view of the totality of the circumstances, the court was fully justified in denying the

motion to suppress and admitting the testimony so as to allow the jury to properly perform its function of determining what weight to give such evidence. *State v. Perez,* supra, 76.

There is no error.

In this opinion the other judges concurred.