## STATE OF CONNECTICUT *v.* LEROY GETTES
### (15359)

O'Connell, Landau and Schaller, Js.

Argued April 2—officially released August 6, 1996

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Bruce Hudock*, assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, attempted robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2) and conspiracy to commit first degree robbery in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2). The defendant claims that the trial court improperly (1) admitted into evidence certain out-of-court and in-court identifications of him and (2) failed to make an initial legal determination as to the relevancy of a bullet that was admitted as evidence at trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the afternoon of December 2, 1991, Minnie Henderson and Johnny Henderson, husband and wife, were working in their jewelry store in Stamford. At approximately 12:40 p.m., the defendant and Frederick Braithwaite entered the store. As Minnie Henderson approached the defendant, he broke through a gate connecting two display cases and forced her to the back of the store where her husband was sitting on a work bench. The defendant told the Hendersons to "get down." Minnie Henderson crawled into a bathroom, opened the window, and screamed for help. She then heard a series of gun shots. The defendant shot and killed Johnny Henderson during the course of the robbery.

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

While the Hendersons were being robbed, Robert Kane entered the store with the intention of purchasing calculator batteries. The door of the store had been held open for Kane by Braithwaite. While he was in the store, Kane heard "a lot of pushing and shoving," yelling, swearing, and, finally, gun shots. Kane fled from the store. Shortly thereafter, Kane witnessed the defendant and Braithwaite hurrying down Atlantic Avenue. Two other witnesses also saw the defendant and Braithwaite hurrying down Atlantic Avenue shortly after the time of the robbery. One of them witnessed Braithwaite drop a gun, pick it up, and place it in an artist's portfolio that he was carrying.

A police officer arrived at the Hendersons' store shortly after the incident and found Johnny Henderson's body on the floor.

I

The defendant first claims that the trial court improperly denied his motion to suppress Minnie Henderson's out-of-court and in-court identifications in violation of both his federal and state constitutional rights to due process.[2] The defendant claims that the out-of-court identification procedure was unnecessarily suggestive and unreliable.

Several additional facts are relevant to this issue. After the robbery, Henderson viewed hundreds of photographs at police headquarters and did not make an identification.

On the morning of December 17, 1991, Henderson returned to the Stamford police station to view photo-

---

[2] "Although the defendant invokes the state constitution in support of his [claim] . . . 'we limit our analysis to the federal guarantee in light of his failure independently to analyze the state constitution.' State v. Joly, 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991)." State v. Shanks, 34 Conn. App. 103, 113 n.10, 640 A.2d 155, cert denied, 229 Conn. 921, 642 A.2d 1216 (1994).

graphic arrays and was shown three sets of photographs, each consisting of six photographs. She selected one photograph, designated as number fifteen. She indicated to the police that the man in the photograph looked like the man who had forced her to the back of her jewelry store and had held her and her husband at gunpoint, but that the man in the store had worn glasses. The police asked Henderson to come back later in the evening to make sure that the man she identified was in fact the man who had robbed her store.

Later that evening, Henderson returned to the police station and was shown one of the three sets of photographs that she had viewed that morning. She chose the photograph of the defendant. Again, however, she was concerned that the man in the photograph was not wearing glasses. Subsequently, the police showed Henderson a clearer and larger photograph of the defendant. Upon viewing this enlarged photo of the defendant, she stated that she was positive that this was the man who had robbed her store.

The defendant moved to suppress the out-of-court identification on the ground that it was unnecessarily suggestive and unreliable. The trial court found that there was nothing suggestive about the first three arrays shown to Henderson in the morning, nor was it improper to have her come back in the afternoon to view the photographs. The court did find, however, that the procedure by which Henderson identified the defendant by viewing a single enlarged photograph was unnecessarily suggestive. Although the trial court found that the out-of-court identification was unnecessarily suggestive, the court declined to suppress Henderson's identification of the defendant. The court ruled that, although the identification procedure was unnecessar-

ily suggestive, it was, nevertheless, reliable. We agree with the trial court.[3]

"The standard by which we review a trial court's decision to admit evidence of identification is well settled. '[W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling.' (Citation omitted.) *State* v. *Mooney*, 218 Conn. 85, 131, 588 A.2d 145, cert denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). Because the inquiry into whether evidence of pretrial identification should be suppressed 'contemplates a series of fact-bound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error. *State* v. *Mitchell*, 204 Conn. 187, 203, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 252 (1987). Because the issue of the reliability of an identification involves the constitutional rights of an accused, [however,] we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. *State* v. *Gordon*, 185 Conn. 402, 416, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Frazier*, 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); see *Culombe* v. *Connecticut*, 367 U.S. 568, 605, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961).' *State* v. *Howard*, 221 Conn. 447, 454, 604 A.2d 1294 (1992)." *State* v. *Figueroa*, 235 Conn. 145, 155, 665 A.2d 63 (1995).

---

[3] Because we find that the identification procedure was reliable, we need not address the merits of the trial court's finding that the procedure was unnecessarily suggestive.

To determine whether a pretrial identification proce-
dure violated the defendant's due process rights, "the
required inquiry is made on an ad hoc basis and is
two-pronged: first, it must be determined whether the
identification procedure was unnecessarily suggestive;
and, second, if it is found to have been so, it must be
determined whether the identification was nevertheless
reliable based on the examination of the 'totality of
the circumstances.' " *State* v. *Theriault*, 182 Conn. 366,
371–72, 438 A.2d 432 (1980).

" '[R]eliability is the linchpin in determining the
admissibility of identification testimony. . . .' *Manson*
v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed.
2d 140 (1977)." *State* v. *Figueroa*, supra, 235 Conn. 157.
"To determine whether an identification resulting from
an unduly suggestive procedure is nevertheless reliable,
a court must weigh the corrupting effect of the sugges-
tive procedure in light of the following factors: the
opportunity of the witness to view the criminal at the
time of the crime, the witness' degree of attention . . .
the level of certainty demonstrated at the confrontation,
and the time between the crime and the confrontation."
(Internal quotation marks omitted.) *State* v. *Howard*,
221 Conn. 447, 453, 604 A.2d 1294 (1992), citing *Manson*
v. *Brathwaite*, supra, 114; *State* v. *Rasmsundar*, 204
Conn. 4, 10–11, 526 A.2d 1311, cert. denied, 484 U.S.
955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

In the present case, Henderson had ample opportu-
nity to view the defendant at the time of the crime. She
observed the defendant at a close range in a well lit
jewelry store. She gave a great deal of attention to the
defendant because she first observed him as a potential
customer, and then as her assailant. She initially pro-
vided a description of the defendant, the accuracy of
which was not contested. She consistently eliminated
all of the other photographs in the photographic arrays,
and, on three occasions, chose the defendant's photo-

graph as depicting one of the men who had robbed her jewelry store. Finally, Henderson's identification occurred only fifteen days after the commission of the crimes. That delay was not so lengthy as to render the identification unreliable. *State* v. *Howard*, supra, 221 Conn. 445 (identification made two and one-half months after crime was committed was reliable); *State* v. *Parker*, 197 Conn. 595, 600, 500 A.2d 551 (1985) (ten month period between identification and victim's viewing of her assailant not so long as to render identification unreliable).

We are satisfied, after our scrupulous review of the record, that the trial court correctly concluded that the identification was reliable under the totality of the circumstances. The trial court considered the victim's opportunity to view the perpetrator at the time of the crime, the proximity of the victim to the perpetrator, the lighting at the scene of the crime, the certainty of the identification, the length of time between the crime and the identification, and the victim's general description of the perpetrator. Because we conclude that the out-of-court identification was reliable, we also agree with the trial court that the in-court identification testimony was reliable. *State* v. *Cubano*, 203 Conn. 81, 96 n.11, 523 A.2d 495 (1987). Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress.

## II

The defendant next claims that the trial court improperly failed to make an initial legal determination as to the relevancy of a bullet that was admitted as evidence at trial. We do not agree.

The additional facts relevant to this issue are as follows. At Johnny Henderson's autopsy, Edward McDonough, a state medical examiner, removed a bullet from Henderson's chest and determined that he died

as a result of that bullet wound. Officer Edward Rondano was present at the autopsy. Rondano cleaned the bullet, photographed it, wrapped a piece of paper around it, and placed it in a container that was sealed with tape. The bullet was later taken to the state forensics laboratory.

The dispute about the bullet arose because McDonough testified at trial that he believed that he had etched markings on the bullet that he had removed from Johnny Henderson's body. When he examined the bullet on the witness stand, however, McDonough did not see these markings. Rondano testified that he believed McDonough had made the etchings, although he had not seen him do so. As a result, the trial court reasoned that either the bullet removed from the victim was not the same bullet presented to the court, or that McDonough was mistaken about making the etchings.

The defendant claims that the trial court admitted the bullet into evidence without making an initial determination of relevancy. The record does not support that contention. The trial court adequately addressed the defendant's objection to the admissibility of the bullet. The court stated, "I've admitted this item [the bullet] into evidence for your [the jury's] consideration over the objection of the defense counsel."

The trial court recognized that there was a conflict in the testimony about the bullet, but that this was a matter for the jury to resolve. The conflicting testimony about the bullet did not make the evidence irrelevant or inadmissible. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that the evidence is susceptible of different explanations or would support

various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible." (Citations omitted; internal quotation marks omitted.) *State* v. *Sauris*, 227 Conn. 389, 406–407, 631 A.2d 238 (1993).

It is well settled that "[t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence." *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). We conclude that the trial court did make an initial determination of relevancy regarding the bullet that was admitted as evidence at trial.

The judgment is affirmed.

In this opinion the other judges concurred.