STATE OF CONNECTICUT *v.* LEONARDO NOGUEIRA
(AC 24686)

Bishop, West and Dupont, Js.

Argued May 26—officially released September 7, 2004

David B. Bachman, special public defender, for the appellant (defendant).

Mitchell S. Brody, senior assistant state's attorney, with whom, on the brief, were Walter D. Flanagan, state's attorney, and Warren Murray, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Leonardo Nogueira, appeals from the judgment of conviction, rendered after a trial to the court, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (1) and 53a-49 (a) (2), assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and threatening in violation of General Statutes (Rev. to 1999) § 53a-62 (a) (1). On appeal, the defendant claims that the trial court's denial of his motion to suppress the victim's[1] out-of-court, one-on-one identification of him as her assailant violated his due process right to a fair trial.[2] We affirm the judgment of the trial court.

Prior to the commencement of evidence, the court held a hearing regarding the defendant's motion to sup-

_____

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] Although the defendant also claims a violation under the state due process clause, our decision is confined to the federal constitution because the defendant has failed to provide an independent analysis of the state constitutional issue. See *State* v. *Fields*, 265 Conn. 184, 190 n.8, 827 A.2d 690 (2003).

press the victim's one-on-one identification of him as her assailant. At the hearing, the victim testified that on November 11, 2000, at approximately 9 p.m., she was attacked by a man while walking in the vicinity of West and Harmony Streets in Danbury. She testified that the man had approached her on a bicycle, rode by her side at a distance of one to two feet for a duration of two to three minutes, attempted to engage her in conversation in both English and Portuguese, and then attacked her. When asked if she could see her attacker's face, she responded: "Of course."

According to the victim, her attacker grabbed her by the legs and dragged her along the sidewalk and into a window well, where he sexually assaulted her for two hours. She further testified that she was positioned face to face with her attacker during the entirety of those two hours. She described her assailant as wearing a long-sleeved shirt decorated with "little squares" and dark pants. According to the victim, her attacker had white skin, was "skinny" and stood approximately five feet, five inches tall. She further testified that she had struck and scratched her attacker in an attempt to escape.

The victim testified that a man eventually came to her aid and helped her escape. She ran into the street, asked for assistance from the occupant of a passing car and took hold of a telephone pole as her assailant pursued her. Her attacker grabbed her and began to strangle her in order to loosen her grip from the pole. The victim testified that she again was able to see her attacker's face as she held onto the telephone pole. This time, her assailant dragged her between two houses. The victim testified that she spent five to ten minutes in that location in the grasp of her assailant. The police arrived at the scene at approximately 11:15 p.m., and the attacker ran away.

The victim entered a police car and described her assailant to two police officers. Within one-half hour of arriving at the scene, the police had taken the victim to view a person whom they had apprehended approximately one-half mile away and who seemed to match the description of the individual that she had provided to them. According to the victim, the man she had viewed in police custody, the defendant, was the same individual who had assaulted her. Although the police held only the defendant, the victim testified that she was confident of the accuracy of her identification.[3]

The police officer who had escorted the victim to the location of the identification procedure testified that she had become excited and began to point at the suspect even before he had asked her any questions regarding him. After observing her initial reactions, the officer asked her twice if that was the individual who had attacked her, and she responded affirmatively each time.

The court denied the defendant's motion to suppress the victim's one-on-one identification,[4] found him guilty on all counts and sentenced him to thirty-five years incarceration, including a ten year mandatory minimum term of imprisonment. On appeal, the defendant claims that the court improperly failed to suppress the victim's one-on-one identification of him. Specifically, he argues that the court's judgment of conviction should be vacated and the case should be remanded for a new hearing on the motion to suppress that takes into

---

[3] The victim testified: "I got informed by the police about a person that they already had. So, because of the description that I gave them about that person, they told me that they had someone who matched that description. And I stand a long time with that person, and I know exactly what he looks like. I was very close to him. I was very close to him. And I was there with him like for an hour, two hours, for a long time."

[4] The court concluded that the one-on-one identification procedure was not unnecessarily suggestive. Regardless, it also concluded that the identification procedure, even if found to be unnecessarily suggestive, was reliable.

account new research questioning the reliability of suggestive identification procedures.[5] The defendant argues that the two-pronged test derived from *Manson* v. *Brathwaite*, 432 U.S. 98, 107, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), to determine the constitutionality of an out-of-court identification procedure is inherently unreliable. In the alternative, the defendant argues that the court misapplied the *Manson* test, as it stands now, because it failed to appreciate fully the magnitude of the "corrupting effect" of the suggestive identification procedure involved in this case. Id., 114. We disagree.

The defendant requests review of his unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We conclude that the defendant has failed to satisfy the third prong of *Golding*. "Upon review of a trial court's denial of a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally or logically inconsistent with the facts. . . . [W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of

[5] On remand, the defendant urges this court to place the burden on the state to demonstrate that the victim was certain of the identification independent of the suggestive procedure.

[6] Our Supreme Court has held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

the trial court as to subordinate facts unless the record reveals clear and manifest error." (Internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 269, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004).

"It is well settled that [i]n determining whether a pretrial identification procedure violated a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail in his claim the defendant must demonstrate that the trial court erred in *both* of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Wooten*, 227 Conn. 677, 685, 631 A.2d 271 (1993).

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . . *Manson* v. *Brathwaite*, [supra, 432 U.S. 114]. To determine whether an identification that resulted from an unnecessarily suggestive procedure is reliable, we must weigh the corrupting effect of the suggestive procedure in light of certain factors such as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [that person's] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (Internal quotation marks omitted.) *State* v. *Wooten*, supra, 227 Conn. 687–88.

We note at the outset that the defendant's challenge to *Manson* and to our Supreme Court jurisprudence

applying its two-pronged test must fail. "This court is not at liberty to disregard or to reevaluate the decisions of our Supreme Court, for we are bound by those decisions." (Internal quotation marks omitted.) *State* v. *Walker*, 80 Conn. App. 542, 557 n.8, 835 A.2d 1058 (2003), cert. denied, 268 Conn. 902, 845 A.2d 406 (2004). We also conclude that the court acted well within its discretion by denying the defendant's motion to suppress the victim's one-on-one identification. The confrontation in this case, although suggestive,[7] was not unnecessarily so because "the exigencies of the situation justified the procedure . . . ." (Internal quotation marks omitted.) *State* v. *Wooten*, supra, 227 Conn. 686. It was imperative for the police to provide the victim with an immediate opportunity to identify her assailant while the precise details of the incident were still fresh in her mind. Moreover, the police needed to continue their search for the fleeing suspect as soon as possible if they had detained the wrong individual. See id.

Even if the victim's one-on-one identification was unnecessarily suggestive, we also conclude that it was reliable under the totality of the circumstances. In this case, the victim was positioned face-to-face with her assailant for more than two hours, escaped for a short period of time and was assaulted again for another five to ten minutes. She had more than an ample opportunity to observe her assailant's face. Although the victim described her attacker as being shorter than the defendant, the court found that she had testified with great accuracy as to the defendant's clothing. A photograph of the defendant, taken on the evening of the assault in question, revealed scratch marks on his neck, face

---

[7] The defendant was surrounded by police officers at the time of his one-on-one confrontation with the victim. It is well settled that "almost any one-to-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively suggestive . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Wooten*, supra, 227 Conn. 686.

and the top of his forehead. Only one-half hour had passed between the end of the assault and the victim's identification of the defendant. The victim became excited and began pointing at the defendant even before she was asked if she recognized him as her attacker. She was certain that the police had detained the correct individual.

We therefore conclude that the one-on-one identification procedure did not violate the defendant's due process right to a fair trial. Accordingly, the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.