## STATE OF CONNECTICUT *v.* DAVID BOUTEILLER
## (AC 29196)

Flynn, C. J., and DiPentima and Dupont, Js.

Argued October 22, 2008—officially released January 6, 2009

*Vito A. Castignoli*, for the appellant (defendant).

*Eileen F. McCarthy*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Helen M. McLellan*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, David Bouteiller, appeals from the judgment of the trial court revoking his probation and reinstating twenty months of the three year unexecuted portion of his previous sentence from a 2005 conviction. On appeal, the defendant claims that the court improperly (1) denied his motion to suppress the pretrial identification made by the victim because it violated his due process rights, (2) based its finding that he violated his probation on insufficient evidence

and (3) abused its discretion by revoking his probation. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. On January 5, 2005, the defendant was convicted of possession of narcotics, in violation of General Statutes § 21a-279 (a). The defendant was sentenced to a term of three years imprisonment, execution suspended, with three years probation. A condition of the defendant's probation was that he "not violate any criminal law of the United States, this state or any other state or territory."

On September 6, 2006, the defendant, who was still on probation, was arrested and charged with attempt to commit robbery in the second degree in violation of General Statutes §§ 53a-49 and 53a-135, and threatening in the second degree in violation of General Statutes § 53a-62. The charges stemmed from an August 10, 2006 incident at the Dunkin' Donuts store located on Kimberly Avenue in New Haven. Thereafter, on May 23, 2007, the defendant was charged with violating the terms of his 2005 order of probation, in violation of General Statutes § 53a-32.[1]

The court held a violation of probation hearing on August 8 and 9, 2007. At the hearing, the state proffered evidence that the defendant violated his probation by committing the crime of attempt to commit robbery in the second degree. The bulk of the evidence produced by the state was elicited from the testimony of Mitigo Wahareetou, the victim, and Joseph Streeto, an officer with the New Haven police department. Wahareetou, an employee of the Dunkin' Donuts store, was working as a cashier at the drive-through window on the evening

---

[1] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . ."

of August 10, 2006. On that date, at approximately 9:45 p.m., a man, whom she knew as a regular customer, approached the drive-through window on a bicycle and ordered a small cup of coffee. After she gave him the coffee, he reached his arm into the drive-through window and told her to give him the "drop money" or he would kill her. When she refused, the man lifted his T-shirt, as if he were retrieving a weapon. She then screamed, and the perpetrator fled the scene on his bicycle.

When the police arrived at the store ten to fifteen minutes later, Wahareetou told them that the perpetrator was a regular customer and that she had seen him at the store a number of times before the incident. She described the perpetrator as "a little bit tall [with] a small face and a pointed nose." Twenty to thirty minutes later, the police brought an individual into the store and asked Wahareetou whether he was the man who demanded money from her. Wahareetou told the police that he was not. Before leaving, the police told her to call them if the perpetrator ever returned to the store.

Wahareetou continued to work at the store after the incident, and, approximately one month later, on the afternoon of September 6, 2006, the perpetrator returned. She informed her manager, and he called the police, but the perpetrator left before the police arrived. Her manager, however, was able to write down the license plate number of the perpetrator's blue pickup truck and gave the number to Streeto.

Streeto performed a department of motor vehicles check on the license plate number, which revealed that the plate belonged to a 1985 blue GMC pickup truck that was registered to the defendant, whose address was 456 Third Avenue, West Haven. Later that day, Streeto went to the defendant's home in West Haven and detained him while another officer went to the

store to pick up Wahareetou so she could view the defendant for identification purposes. When the defendant was presented to Wahareetou for identification, she immediately identified him as the perpetrator and stated that she was 100 percent positive. At the violation of probation hearing, Wahareetou stated that she was still 100 percent certain of her earlier identification and identified the defendant again in the courtroom.

At the conclusion of the adjudicative phase[2] of the hearing, the court found that the state had met its burden of proving by a fair preponderance of the evidence that the defendant violated his probation by committing a crime, namely, attempt to commit robbery in the second degree. At the conclusion of the disposition phase of the hearing, the court found that the rehabilitative purpose of probation for the defendant would not be furthered. The court, therefore, revoked the defendant's original sentence and committed him to the custody of the commissioner of correction for twenty months.

I

The defendant first claims that the court improperly denied his motion to suppress the pretrial identification made by the victim because it violated his right to due process under the fourteenth amendment to the United States constitution.[3] Specifically, the defendant argues that the one-on-one identification procedure used by the police was unnecessarily suggestive because it was not in close temporal proximity to the attempted robbery, and the resulting identification was unreliable

---

[2] As further explained in part II, "[a] revocation of probation proceeding has two distinct components, an adjudicative phase and a dispositional phase." *State* v. *Barile*, 267 Conn. 576, 578 n.3, 839 A.2d 1281 (2004).

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law. . . ."

because Wahareetou's testimony was inconsistent. We disagree.[4]

The following additional facts are relevant to the defendant's claim. On the second day of the revocation of probation proceeding, the defendant moved to suppress Wahareetou's one-on-one identification of him on the ground that the procedure was inherently suggestive and that her identification was unreliable, as illustrated by her inconsistent testimony as to the number of times she had seen the defendant at the store before and after the attempted robbery.[5] The court, in denying the motion to suppress, stated: "[O]ne-on-one show-ups are suggestive, no question about that, but was the initial observation by the alleged victim of the defendant reliable? It's lighted, she's looking at him, she has good chance to see him, she describes him as thin, thin face, pointy nose, described what he was wearing in clothing and then when the police stopped that one person . . . they brought that person back, she didn't just jump at it and say that's him, she said that's not him, so [it was

---

[4] We acknowledge that the state, aside from arguing that the identification was reasonably necessary and reliable, also argues that the court correctly denied the motion to suppress because the exclusionary rule does not apply to revocation proceedings. In *State* v. *Daniels*, 248 Conn. 64, 80 n.16, 726 A.2d 520 (1999), overruled in part on other grounds by *State* v. *Singleton*, 274 Conn. 426, 438, 876 A.2d 1 (2005), the issue of whether identification evidence could be suppressed under the exclusionary rule at a revocation of probation proceeding, in which the exclusionary rule typically does not apply, was raised tangentially. Our Supreme Court stated: "[W]e assume, without deciding, that a claim of unduly suggestive identification under the due process clause applies to a revocation of probation proceeding." Id.

We have been unable to find any other cases that discuss this issue. The cases cited by the state in its brief relate to the applicability of the exclusionary rule to warrantless searches and seizures in revocation of probation proceedings. We need not, however, decide the issue in the present case, as it did not serve as a basis for the court's denial of the motion to suppress. The court heard the motion and decided it on its merits. Had the state wanted to raise this issue, it should have brought it to the court's attention before the motion was heard, considered and decided.

[5] Wahareetou had testified the previous day.

reliable]." "[The] [o]ne-on-one show-up you can say is unnecessarily suggestive but it is, under all the circumstances, reliable . . . ."

We now set forth our applicable standard of review. It is well settled that "[w]hether an identification procedure offends a defendant's due process rights depends on (1) whether it was impermissibly and unnecessarily suggestive, and (2) if so, whether the identification was nonetheless reliable based on the totality of the circumstances." *State* v. *Sims*, 12 Conn. App. 239, 242, 530 A.2d 1069, cert. denied, 206 Conn. 801, 535 A.2d 1315 (1987). "To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . .

"Furthermore, [w]e will reverse the trial court's ruling [on evidence] only where there is an abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 385, 933 A.2d 1158 (2007).

"Both this court and our Supreme Court have stated that a one-to-one confrontation between a [victim] and the suspect presented to him for identification is inherently and significantly suggestive because it conveys the message to the [victim] that the police believe the suspect is guilty." (Internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 272, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004).

We have recognized, however, that "[w]hile a one-on-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively suggestive, it does not automatically follow that such a show-up is impermissibly suggestive." *State* v. *Sims*, supra, 12 Conn. App. 242. "[I]t has been held repeatedly . . . that one man confrontations do not per se constitute a denial of due process of law." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 272. "Prompt on-the-scene confrontations tend under some circumstances to ensure accurate identifications and the benefit of promptness not only aids reliability but permits a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay." *State* v. *Sims*, supra, 42.

In the present case, the court, in denying the defendant's motion to suppress, recognized that the particular one-on-one identification may have been unnecessarily suggestive but held that the identification was nonetheless admissible because it was reliable. We agree that the circumstances of this case did not necessitate a one-on-one identification procedure. The identification took place almost one month after the attempted robbery. In almost all of the cases in which this court has held that a one-on-one show-up was a permissible investigative technique, the show-up occurred very shortly after the crime was committed. See *State* v. *Nogueira*, 84 Conn. App. 819, 826, 856 A.2d 423 (2004) (thirty minutes), cert. denied, 273 Conn. 927, 873 A.2d 1000 (2005); *State* v. *Sparks*, 39 Conn. App. 502, 510, 664 A.2d 1185 (1995) (twenty minutes); *State* v. *Barnes*, 16 Conn. App. 333, 344, 547 A.2d 584 (1988) (twenty minutes); *State* v. *Bell*, 13 Conn. App. 420, 425, 537 A.2d 496 (1988) (less than two hours); *State* v. *Sims*, supra, 12 Conn. App. 242 (thirty-five minutes); *State* v. *Tate,* 9 Conn. App. 141, 143, 516 A.2d 1375 (1986) (less

than one hour). In each of those cases, we reasoned that the one-on-one identification was not unnecessarily suggestive because a prompt on scene confrontation was more likely to be accurate.

We agree with the court that, under the totality of the circumstances, the victim's identification of the defendant was sufficiently reliable to be admitted into evidence. "[R]eliability is the linchpin in determining the admissibility of identification evidence . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 8 Conn. App. 399, 403, 513 A.2d 176 (1986). "The factors to be considered in determining the reliability of an [unnecessarily suggestive] identification include the opportunity of the [victim] to view the criminal at the time of the crime, the [victim's] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time lapse between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)." (Internal quotation marks omitted.) *State* v. *Sims*, supra, 12 Conn. App. 243.

"The reliability of the victim's identification of the defendant as her assailant is disclosed by the circumstances . . . . We would also note that [whether] the victim had a good and sufficient opportunity to view her assailant at the time of the assault at close range and with adequate lighting . . . enhance[s] reliability. . . . It has been stated that the victim of [a] crime is apt to be a more reliable source of identification than is a mere spectator to the incident." (Internal quotation marks omitted.) *State* v. *Wright*, supra, 8 Conn. App. 404.

In the present case, the victim, Wahareetou, had ample opportunity to view the defendant as he sat on

his bicycle at the drive-through window. She was positioned face-to-face with him, her view was unobstructed, there was adequate lighting, and she was within very close range. See *State* v. *Austin*, 244 Conn. 226, 249, 710 A.2d 732 (1998) (one-on-one identification reliable where witness was in close range and had unobstructed view in well lit area); *State* v. *Tate*, supra, 9 Conn. App. 146 (same). Wahareetou specifically directed her attention to the defendant when he ordered his cup of coffee, and when he thrust his arm into the drive-through window and demanded the "drop money." See *State* v. *Collette*, 199 Conn. 308, 312, 507 A.2d 99 (1986) (identification reliable where victim had unobstructed view, was ten to fifteen feet away and directed attention to defendants). Also, Wahareetou provided the police with a detailed description of the perpetrator that was consistent with the defendant's appearance. See *State* v. *Mills*, 57 Conn. App. 356, 362, 748 A.2d 891 (2000) (identification reliable where witness accurately described defendant to police before identification took place).

Furthermore, when another individual was presented to Wahareetou for identification, she did not identify that person as having been involved in the attempted robbery. This indicates that she was an unlikely candidate for "subliminal seductions . . . ." (Internal quotation marks omitted.) *State* v. *Collete*, supra, 199 Conn. 312. It also "demonstrates the conduct of a [victim] exercising independence of judgment under stressful circumstances." (Internal quotation marks omitted.) *State* v. *Mills*, supra, 57 Conn. App. 363. Additionally, at the moment of identification, Wahareetou did not hesitate to identify the defendant as the perpetrator and did so with no uncertainty. See *State* v. *Austin*, supra, 244 Conn. 249 (reliable identification where witness recognized defendant immediately and displayed no uncertainty).

Moreover, the fact that Wahareetou's identification of the defendant came twenty-seven days after the commission of the crime does not render it unreliable. See *State* v. *Howard*, 221 Conn. 447, 452–56, 604 A.2d 1294 (1992) (identification occurring two and one-half months after commission of crime not unreliable); *State* v. *Gettes*, 42 Conn. App. 472, 478, 680 A.2d 996 (identification occurring fifteen days after commission of crimes not unreliable), cert. denied, 239 Conn. 921, 682 A.2d 1009 (1996). Twenty-seven days is not an inordinate amount of time, particularly in this case in which the victim had seen the defendant before and after the attempted robbery.[6] Wahareetou never wavered from her initial statement to the police that the perpetrator was a regular customer and that she could identify him. Finally, there was no evidence that Wahareetou had any motivation or reason to identify the defendant falsely.

Therefore, regardless of whether Wahareetou was unsure as to how many times she had seen the defendant at the store, her identification was reliable.[7] Because the identification was reliable, the court acted within its discretion in refusing to suppress the evidence relating to it. The defendant's due process rights under the fourteenth amendment, therefore, have not been abridged.

II

The defendant's second claim is that the court improperly found that he violated the condition of his

[6] The defendant argues that the fact that he continued to patronize the store after the attempted robbery speaks more to innocence than guilt. The state counters that because the defendant had previously attempted to rob the store during the night shift, he would not have expected Wahareetou's presence during the day shift, which is why he felt comfortable patronizing the store within the day shift hours. These arguments, however, are unrelated to whether the one-on-one identification of the defendant should have been suppressed as a violation of his due process rights.

[7] We note that although Wahareetou's testimony was slightly unclear, she ultimately clarified that she had seen the defendant seven to eight times before and two times after the incident.

probation that he not commit a crime. Specifically, the defendant asserts that the court did not have sufficient evidence to support its finding that he committed the crime of attempt to commit robbery in the second degree because the only evidence produced by the state was Wahareetou's allegedly incorrect identification.

As a preliminary matter, we set forth the legal principles and the standard of review pertinent to our discussion. "[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked." (Internal quotation marks omitted.) *State* v. *Fowler*, 102 Conn. App. 154, 165, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007). "Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004).

The defendant's claim that the court improperly found that he violated his probation pertains to the first component of the revocation hearing. "In a probation revocation proceeding, the state bears the burden of proving by a fair preponderance of the evidence that the defendant violated the terms of his probation." (Internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 79, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). "As a reviewing court, we may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . .

A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Durant*, 94 Conn. App. 219, 224, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007).

At the end of the adjudicative phase of the violation of probation hearing, the court set forth its findings, in relevant part, as follows: "[The] issue here is [whether Wahareetou] is mistaken. On September 6, [2006] she said she was 100 percent sure. In court she was asked, and she identified [the defendant]. I understand there were inconsistencies as to how many times the individual came to the store between August 10 and September 6, [2006], but she was sure it was him. The state has met its burden of proof by a fair preponderance of evidence."

We have reviewed Wahareetou's testimony in its entirety, and it amply supports the court's factual findings. The defendant does not claim that those findings, if reasonable, were insufficient to support the finding that he violated his probation. Instead, he vigorously challenges Wahareetou's credibility, just as he did to the trial court. It is not the function of this court, however, to reevaluate the cold record of Wahareetou's testimony to determine whether it was plausible that she was mistaken. See *State* v. *Blake*, 108 Conn. App. 336, 343, 947 A.2d 998, aff'd, 289 Conn. 586, 958 A.2d 1236 (2008). "As the sole finder of fact in the probation revocation proceeding . . . the court was entitled to arrive at its own conclusion regarding the [witness'] credibility and what weight to afford [her] testimony." *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132

(2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003). The weight to be given to the credibility of a witness is within the sole province of the trier of fact and will not be reviewed on appeal. *Sanders* v. *Dias*, 108 Conn. App. 283, 294, 947 A.2d 1026 (2008). Consequently, we cannot say that the court's decision was clearly erroneous.

We conclude, therefore, that the court had before it sufficient evidence to support its finding, by a fair preponderance of the evidence, that the defendant committed the crime of attempt to commit robbery in the second degree. Accordingly, the court properly found that the defendant had violated his probation.

## III

The defendant's third and final claim is that the court improperly exercised its discretion by revoking his original sentence and committing him to the custody of the commissioner of correction for a period of twenty months. Specifically, he argues that the evidence produced did not support the court's finding that the rehabilitative purpose of probation could not be fulfilled.

We have explained that "[a] revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . If a violation [of probation] is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Citation omitted; internal quotation

marks omitted.) *State* v. *Durant*, supra, 94 Conn. App. 227–28.

Therefore, we must now determine whether the court abused its discretion in revoking the defendant's original sentence. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . A defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden." (Citation omitted; internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 104, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

"Our determination of whether the trial court abused its discretion in revoking the defendant's probation is guided by the following principles. We previously have recognized that [t]o a greater or lesser degree, it is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . .

"A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the

probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Internal quotation marks omitted.) Id., 105.

At the dispositional phase of the defendant's revocation of probation proceeding, the court listened to the arguments of counsel and testimony from the defendant's mother, father, coworker, former supervisor, fiancee and the defendant himself. Those witnesses essentially testified that the defendant was a good and reliable person, and they pleaded for leniency on the ground that he had a newborn son, a job, a place in the community and had not been arrested since September 6, 2006. At the conclusion of the hearing, the court stated: "The issue before me now is this one: is . . . a rehabilitative purpose of probation still in your future? Your criminal behavior or activity is not that serious or lengthy, but it has escalated. You start with a possession of marijuana in 2000, and you go to narcotics, an actual sale scenario, but it was a possession of narcotics conviction in 2005. Escalates to a violent crime of robbery in 2006. So, based upon that, irrespective of what your family said today—because you probably are a good son, you probably are a good husband. But you do bad things now and then. This robbery was a bad thing. I make a finding today that [the] rehabilitative . . . purpose of probation would not be further served with you."

Our review of the record reveals that the court did not abuse its discretion in revoking the defendant's probation. Specifically, we conclude that the court properly considered whether the beneficial aspects of probation were being served. The court had before it the favorable testimony from the defendant's family and friends, but it also had the defendant's criminal history. A conviction of possession of marijuana in 2000, a conviction of possession of narcotics in 2005, and an arrest for attempt to commit robbery in the second

degree in 2006 supports the court's finding that the defendant's criminal activity was only becoming more serious as time passed. It was reasonable for the court to conclude that the defendant was no longer a "good risk" because his criminal behavior was escalating despite the fact that he was on probation. See *State* v. *Russell*, 58 Conn. App. 275, 281, 752 A.2d 59 (2000) (in determining whether defendant's probation should be revoked, court properly considered defendant's criminal history and determined he was no longer fit for probation). The court was entrusted with the decision as to whether the defendant was meeting the goals of his probation, and we must afford every reasonable presumption in favor of the correctness of that decision.

The judgment is affirmed.

In this opinion the other judges concurred.